### THE T. W. WELLINGTON.

(District Court, E. D. New York. September 5, 1916.)

SHIPPING ⬅➡209(1)—LIMITATION OF LIABILITY—TIME OF TAKING PROCEEDINGS—CONDITIONS.

The owner of a vessel may maintain proceedings for limitation of liability after recovery of a judgment at law against him on the claim against which limitation is sought, and even after an appeal has been taken and a supersedeas bond given; but in such case he will be required, in addition to the surrender of the vessel, to pay the costs of the trial and appeal, and an amount equal to the deterioration in value of the vessel since the claim originated, with interest on the value of the vessel from the date of the judgment.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 646, 662; Dec. Dig. ⬅➡209(1).]

In Admiralty. Petition of David J. Conroy, owner of the steam tug T. W. Wellington, for limitation of liability. On motion for restraining order against claimant. Granted on conditions.

Foley & Martin, of New York City, for libelant.
Theodore F. Kuper, of New York City, for claimant.

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

CHATFIELD, District Judge. The petitioner in this proceeding to limit liability was the defendant in an action in the state court in which judgment was obtained for the sum of $1,251.12, upon the 28th day of January, 1916, for an injury received December 23, 1913. An appeal was taken from the judgment, which was based upon a claim for personal injuries, but no security given, so as to stay execution pending the appeal. Upon the judgment debtor's promise to give such security, the issuance of execution was delayed. Subsequently the bond was given, but the papers on appeal were not completed, and again the plaintiff and judgment creditor delayed the making of a motion to dismiss the appeal, upon the promise of the judgment debtor to pay up the judgment. Thereafter the judgment debtor instituted the present proceedings to limit his liability, under sections 4283 and 4285 (Comp. St. 1913, §§ 8021, 8023), to the value of the boat, and has surrendered the boat, which at the time of surrender has been reported to be worth only about $500. The boat was transferred to a trustee on July 18, 1916.

It has been held in the case of The Passaic (D. C.) 190 Fed. 648, that a surrender upon a petition to limit liability, at a date long after the liability was incurred, could only be allowed where the boat had not depreciated beyond ordinary wear and tear. In other words, if the owner surrendered the boat, or desired to substitute a bond for the same, the amount of the surrender must equal the fair value for the boat at the time when the liability was incurred. As was said in the case of The Ticeline, 221 Fed. 412, 137 C. C. A. 207, this liability was in the form of a maritime lien accruing at the time of the accident. The owner of the boat has no right to limit his responsibility by surrendering the property, and at the same time use up that property to his own profit. See The Capt. Jack (D. C.) 169 Fed. 455, holding that a petition to limit liability will be dismissed if the entire "vessel" is not surrendered.

In a case where the boat is sold, a petition to limit liability should not be granted, if the surrender of the boat would deprive the creditor of the right to obtain the fair value of the boat as it was at the time when the owner of the boat first had the election of remedies. It has also been held that limitation can be had where but one claim is presented. White v. Island Transp. Co., 233 U. S. 346, 34 Sup. Ct. 589, 58 L. Ed. 993; The Benefactor v. Mount, 103 U. S. 239, 26 L. Ed. 351. But the total liability must exceed the value of the boat. The Defender (D. C.) 201 Fed. 189.

The boat may be surrendered while liability is contested, and a bond given as security for carrying on litigation. The Benefactor, supra. A judgment may have been obtained before hearing of or application for the limitation, and the court may prevent the parties from attempting by execution or otherwise to collect any moneys recovered by them beyond the amount awarded in the said proceedings. The Benefactor, 103 U. S. 244, 26 L. Ed. 351; In re P. Sanford Ross (D. C.) 196 Fed. 921 (reversed on other grounds 204 Fed. 248, 122 C. C. A. 516); The Capt. Jack (D. C.) 169 Fed. 456.

In Gleason v. Duffy, 116 Fed. 298, 54 C. C. A. 100, the Circuit Court of Appeals agreed with the court below, which held that the peti-

tioner, Gleason, could have a decree restraining a judgment creditor, Duffy, from collecting his judgment and from prosecuting the suit upon the appeal bond. The surety was not before the court, but the action against the surety was brought to the court's attention. The Circuit Court of Appeals said that the proceeding could be instituted after the "rendition of a judgment at common law," but should be "seasonably instituted," so as to allow proper determination of the "extent" of liability, citing Transportation Co. v. Wright, 13 Wall. 104, 20 L. Ed. 585. It therefore made a condition of the limitation payment of costs in the trial court and on appeal in the damage action.

So, also, in Monongahela River Consol. Coal & Coke Co. v. Hurst, 200 Fed. 711, 119 C. C. A. 127, costs and interest on the value of the vessel, etc., from the time when execution could have been issued, were allowed in a case holding that an appeal and the giving of a bond postponed only the time when limitation could be had. The court said:

"We think it the better view that the obligation of the surety was only coextensive with that of the principal, that the liability incurred under the supersedeas bond was impliedly subject to the enforcement of the limited liability statute, and would be itself superseded, at lease pro tanto, by the decree limiting such liability. We see no merit in the proposition that the surety can be held to full liability, notwithstanding the discharge of the principal. Decisions based upon the express provisions of the Bankruptcy Act are not in point."

But in all these cases the liability which is to be limited is that for the claim or claims admittedly liens against the boat itself. Under circumstances shown in the present case, the owner of the boat did not elect to surrender the boat while the matter rested in the condition of a lien claim. Nor did he file his petition to limit liability during the time that the lien claim was protected from collection by the operation of law. He delayed until, in the place of the maritime lien, the creditor had a judgment and a valid contract to pay this judgment as a personal obligation, based upon sufficient consideration of forbearance, as well as the bond of a surety. In the meantime the petitioner had also used the boat and received the advantage from such activities as caused unusual wear and tear. He has sought to throw upon the judgment creditor the loss which the boat has received through apparently unexpected deterioration.

Under these circumstances, a petition to limit liability cannot be presented for the consideration of a court applying a statutory remedy under the rules of equity, unless the petitioner can put the other parties to the action in the same position in which they would have been if he had proceeded when first called upon to elect as to his course of action. It is evident that the only way in which he could do this is to pay the costs of the trial and of appeal, and such amount as may be found to represent the difference in value at the time of the accident, with interest on the value of the boat from the date of judgment.

The absence of the surety from this proceeding is of no importance, in this case, as the creditor is before the court, and a restraining order against him will avoid the seeming violation of the statute prohibiting any interference with the state court in the conduct of its own trials.

Motion granted upon above terms.